Davis, by guardian, vs. McCurdy and others. (Two Appeals.)

*December 2 — December 17, 1880.*

SURETYSHIP: *Liability released by a discharge in bankruptcy.*

The contingent liability of a surety on a guardian's bond was provable against him in bankruptcy proceedings, under sec. 5068, R. S. of U. S.; and his discharge in bankruptcy released him from such liability, under sec. 5117.

APPEALS from the Circuit Court for *Winnebago* County. Action on a guardian's bond, commenced August 15, 1879. Loper, the principal in said bond, did not appear. *Bray* and

*McCurdy*, the sureties on the bond, both appeared, but the former did not answer. *McCurdy* answered, setting up his discharge in bankruptcy on the 18th of June, 1877; and said discharge was put in evidence on the trial. By direction of the court, a verdict was rendered in favor of *McCurdy*, but against Loper and *Bray;* and judgment was rendered accordingly. Plaintiff appealed from so much of the judgment as was in favor of *McCurdy;* and *Bray* appealed from so much of it as was in favor of the plaintiff.

*Moses Hooper*, for the plaintiff.

*C. D. Cleveland*, for the defendant *Bray*:

The discharge in bankruptcy did not release *McCurdy* from his liability on the bond. There was no claim thereon provable against his estate when the bankruptcy proceedings were commenced. U. S. R. S., secs. 5067–5071. Until the liability on the bond became fixed, it could not be regarded as a debt due and payable, or even as a debt existing but not payable until a future day. *In re Loder*, 4 B. R., 190. Such liability did not become fixed until after the adjudication and discharge. Up to that time there had been no breach of the bond. The omission to file an account was a mere formal breach, and furnished a claim for nominal damages only, and not a claim provable against the surety. *Loring v. Kendall*, 1 Gray, 305.

For the defendant *McCurdy* there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

It is true the default of Loper was not judicially determined until after the discharge in bankruptcy; but before that time there was a contingent liability of the sureties on his bond, which was provable under the bankrupt act. U. S. R. S., secs. 5067–5070; *Crafts v. Mott*, 5 Barb., 305; *S. C.*, 4 Coms., 604; *Tobias v. Rogers*, 13 N. Y., 59; *Mace v. Wells*, 7 How. (U. S.), 272; *Parker v. Bradford*, 45 Iowa, 311; *S. C.*, 17 N. B. R., 485; *In re Am. P. G. & F. Ins. Co.*, 12 id., 56; *Wolf v. Stix*, 99 U. S., 1; 20 Vt., 293; 9 Ired. Law, 1; 26 Vt., 397; 19 Ill., 134; 21 id., 165; 10 Mo., 7; 14 Pa. St.,

90; 25 id., 141; 8 Humph., 153. The discharge of the surety in bankruptcy, therefore, released him from all liability on the bond. *Jones v. Knox,* 8 N. B. R., 559; *S. C.,* 46 Ala., 53; *In re Taylor,* 16 N. B. R., 40; *Reitz v. People,* id., 96; *S. C.,* 72 Ill., 435; *Bouie v. Pucket,* 7 Humph., 169; *Smith v. Hodson, ante,* p. 279. See also *Amoskeag Manuf'g. Co. v. Barnes,* 49 N. H., 312.

CASSODAY, J. December 31, 1873, the defendant Loper was appointed guardian of the person and estate of the plaintiff, *Grace Estelle Davis,* and thereupon executed and filed the bond in the form required by the statute, in the penal sum of $1,500.

The defendants *McCurdy* and *Bray* executed the bond as sureties for Loper. Thereupon Loper, as such guardian, became possessed of $1,800 of the estate, but never rendered any account of the same, and never settled his account with the county judge, and never paid over or delivered any of the estate to the minor or to any one for her, and never made or returned any inventory as required by the bond, but in 1875 ceased to be a resident of this state. In 1878–9, Loper was required by the court to settle his account as such guardian and surrender the estate, but failed to do so, and in default was removed, and the present guardian, Davis, appointed in his place; and thereupon this action was brought upon said guardian's bond against Loper, *McCurdy* and *Bray,* for the breach of the same by Loper as such guardian. *McCurdy* answered, setting up the commencement of certain proceedings in bankruptcy August 28, 1876, through and from which he obtained the usual certificate of discharge June 18, 1877. The jury, under the direction of the court, rendered a verdict in favor of *McCurdy* and against Loper and *Bray,* and judgment was entered thereon accordingly. The plaintiff appeals from that part of the judgment in favor of *McCurdy;* and *Bray* appeals from that part of the judgment against him. The only

error claimed is, that the court directed a verdict in favor of *McCurdy*.

Section 5119, U. S. R. S., 986, provided that "a discharge in bankruptcy duly granted shall, subject to the limitations imposed by the two preceding sections, release the bankrupt from all debts, claims, liabilities and demands which were or might have been proved against his estate in bankruptcy." Did the debt, claim, liability or demand sued upon "exist" August 28, 1876, and was it "provable" under the bankrupt act? Prior to August 28, 1876, there had been repeated technical breaches of the bond by Loper, and the year before he had ceased to be a resident of Wisconsin and became a resident of a distant state. It is true there was not an absolute debt against *McCurdy*, August 28, 1876, which was then enforceable at law, but this was not necessary in order to make it provable in bankruptcy.

Section 5068, U. S. R. S., 976, provided that, "in all cases of contingent debts and contingent liabilities contracted by the bankrupt, and not herein otherwise provided for, the creditor may make claim therefor, and have his claim allowed, with the right to share in the dividends if the contingency happens before the order for the final dividend; or he may at any time apply to the court to have the present value of the debt or liability ascertained and liquidated, which shall then be done in such manner as the court shall order, and he shall be allowed to prove for the amount so ascertained."

Section 5069 provided for the proving of liabilities which became absolute and fixed between the time of the adjudication and the declaration of the final dividend, even where the bankrupt was a mere surety; and section 5070 provided a way for the surety to pay, and then prove for the amount paid, or prove without making payment. In the two sections last mentioned, nothing is said about "contingent debts," nor "contingent liabilities." Section 5068 was expressly intended to provide for the proof of "all cases of contingent debts and con-

tingent liabilities contracted by the bankrupt, and not . . . otherwise provided for " in the bankrupt act. It has no application to "debts" or "liabilities" not "contingent." It was intended, therefore, to cover cases where the debt or liability should be dependent for effect upon something which might or might not occur'— that is, a mere possibility. It is true that the liability of *McCurdy* in this case did not become "absolute" and fixed before his bankruptcy; but it is equally certain that the signing of the bond by the parties, and the receipt of the estate by Loper, created a "contingent liability contracted by the bankrupt," within the meaning of section 5068. Loper was absolutely, and *McCurdy* and *Bray* contingently, liable from the first. The contingencies were the failure of Loper to perform the several conditions named in the bond. The first clause of this section makes it necessary, in order to prove under it, that the "contingency happens before the order for the final dividend;" but this seems to indicate nothing more than that the event upon which the liability depends must actually occur, not that it must also be judicially ascertained. This view is supported by the words "absolute" and "fixed," in section 5069, which seem to indicate a judicial determination. But even if we are wrong in this construction, yet the latter clause of the section provides a way for having "the present value of the debt or liability ascertained and liquidated," and "proved," even before the happening of the contingency.

Since the "present value" of the liability of *McCurdy* to the plaintiff might have been "ascertained and liquidated," and "proved against his estate in bankruptcy," it comes not only within the spirit, but also within the letter, of sections 5068 and 5119; and, by the express terms of the latter section, the discharge must release the bankrupt, unless it comes within the limitations of the two preceding sections therein mentioned. The only words in either of those sections bearing upon the point here involved are contained in section 5117,

which declared that " no debt, created by . . . the bankrupt, . . . while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy." The debt due the plaintiff from Loper, as guardian, was undoubtedly created while he was acting in a fiduciary character, within the meaning of this section, but as to his sureties it was otherwise. They received no part of the estate. They assumed no control over the property or person of the ward, or the conduct of Loper. They did not undertake to execute any trust. They were not required to make an inventory, nor to render any account. Loper, as the guardian, took the estate, and it was his duty, not theirs, to keep it safely and pay it over. No confidence was reposed by the court in the sureties. They did not undertake to perform any duty, but simply guarantied that Loper should. They were not liable for breach of duty, but for breach of contract by reason of Loper's breach of duty. They were not liable in tort, but only on contract. Loper was liable in tort as well as on contract, but it is the tort and not the contract which would prevent his discharge.

Whether it was wise to subject the rights of infants and other persons under disabilities to the sweeping provisions of these sections, was a question for congress and not for the courts. It is for the courts to declare the law, however harsh may be its provisions. We find no saving clause to protect the claim of the plaintiff against the discharge of the bankrupt.

We are therefore of the opinion, (1) that the liability of the surety on the guardian's bond was a contingent liability, the present value of which might have been ascertained, liquidated and proved against the estate of the bankrupt, within the meaning of section 5068, U. S. R. S.; (2) that the discharge in bankruptcy released the surety from all liability on the guardian's bond, within the meaning of section 5119, U. S. R. S.; (3) that the contingent liability of a surety upon a guardian's bond is not a debt created by him while acting in a fiduciary character, so as to prevent a discharge in bankruptcy, within

the meaning of section 5117, U. S. R. S.   In support of these propositions we cite *Reitz v. The People*, 72 Ill., 435; *Jones v. Knox*, 46 Ala., 53; *Ex parte Taylor*, 16 N. B. R., 40; *A. M. Co. v. Barnes*, 49 N. H., 312; *Bouie v. Pucket*, 7 Humph., 169; *Mace v. Wells*, 7 How., 272; *Jemison v. Blowers*, 5 Barb., 686; *Crafts v. Mott*, id., 305; *S. C.*, 4 Coms., 604; *Tobias v. Rogers*, 13 N. Y., 59; *Bates v. West*, 19 Ill., 134; *Clarke v. Porter*, 25 Pa. St., 141; *Shelton v. Pease*, 10 Mo., 473; *Dean v. Speakman*, 7 Blackf., 317.

*By the Court.* — That part of the judgment in favor of *McCurdy* and appealed from by the plaintiff, is affirmed; and that part of the judgment in favor of the plaintiff and appealed from by *Bray*, is affirmed.