COYLE C. ARTERBURN v. COUNTY OF REDWOOD.[1]

January 19, 1923.

No. 23,242.

**Subcontractor not an employe of county within the compensation act.**

W contracted with the county to haul gravel at an agreed price per cubic yard. Plaintiff agreed with W to haul with W's team for half the earnings. The county paid W who divided the amount with plaintiff. *Held* that plaintiff was not an employe of the county within the meaning of the Workmen's Compensation Act.

Upon the relation of county of Redwood the supreme court granted its writ of certiorari directed to the district court of Redwood county and the Honorable I. M. Olsen, judge thereof, to review the proceedings in that court awarding compensation to plaintiff under the Workmen's Compensation Act. Reversed.

*Barrows & Metcalf*, for relator.
*A. R. A. Laudon*, for respondent.

[1]Reported in 191 N. W. 924.

TAYLOR, C.

Certiorari to review the order of the district court of Redwood county awarding compensation to plaintiff from defendant county under the Workmen's Compensation Law.

The county contends that the finding that plaintiff was an employe of the county is wholly without evidence to support it and cannot be sustained.

The facts are not in dispute. The only evidence bearing on the question is a brief stipulation and the testimony of plaintiff himself. At the opening of the hearing it was stipulated:

That in the month of January, 1921, the county of Redwood was graveling its state roads and for that purpose contracted with or employed various persons to haul gravel onto those state roads at the rate of $1.30 per cubic yard; that during the month of January, 1921, the county of Redwood entered into an agreement with one Wiley C. Wilson, wherein and whereby the aforesaid Wiley C. Wilson agreed to haul gravel for said Redwood county at the stated rate of $1.30 per cubic yard.

Plaintiff testified that he and Wilson made an agreement by which he was to haul gravel with Wilson's team and they were to divide the earnings equally; that he began hauling on Tuesday and continued until the happening of the accident on the following Friday; that the county paid Wilson for the gravel hauled, and that Wilson paid him one-half thereof. It also appears from his testimony that the gravel was taken from a pit belonging to the county, that about 20 teams were engaged in the work, and that the county had a man in charge of the pit and another out on the road. What duties were to be performed by these men or what authority had been given them, is not disclosed, except as it may be inferred from the bare statement of plaintiff that one was manager at the pit and the other was out on the road checking. There is nothing in the record tending to show that plaintiff ever had any agreement or arrangement of any kind with the county, or that the county or any of its officers or agents had any knowledge of his arrangement with Wilson. There is no evidence that the fact that plaintiff was taking part in

the work was known to anyone having authority to make contracts or employ men on behalf of the county. The county had made a contract with Wilson by which Wilson was to haul gravel at an agreed price per cubic yard. He was at liberty to employ his own driver on his own terms and employed plaintiff on the terms above stated. The county had no part in fixing the amount of plaintiff's compensation and no power to interfere with or vary any agreement which he and Wilson saw fit to make. These were matters wholly beyond the control of the county.

No one can become the employe of another without the consent of the other. The law makes the employer responsible for the acts of his employes while engaged upon his business, and also compels him to compensate them for any injuries they may sustain, even if the injuries result from their own carelessness. The law could not impose such burdens upon him if those who are careless or reckless could become his employes without his consent. The relation of employer and employe is purely contractual and there is no evidence of any such relationship in this case.

The statute, G. S. 1913, § 8230, subd. d, provides:

The term "employer" as used herein shall mean every person not excluded by section 8, who employs another to perform a service for hire, and to whom the "employer" directly pays wages.

The county never paid wages to plaintiff and never contracted to pay wages to him. It was Wilson, not the county, who employed him, and Wilson, not the county, who paid him. The facts bring the case within the doctrine of State ex rel. D. M. Gilmore Co. v. District Court, 147 Minn. 12, 179 N. W. 216, and we are constrained to hold that the county was not the employer of plaintiff within the meaning of that term as defined by the statute. It follows that the order must be and is reversed.

Holt, J. (dissenting.)

I dissent. To my way of looking at this record there was no independent contractor hauling the gravel. The county employed whoever came with a team and hauled a load. Its agents directed how the gravel should be loaded and where unloaded. Sickness in

Wilson's family prevented him from using his team·in the work. He lent the team to plaintiff who was accepted as an employe.

HALLAM, J. (concurring in dissent.)